**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALEX J.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 25 CV 12170<br><br>Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alex J. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion for summary judgment [13] is denied, defendant's motion for summary judgment [16] is granted, and the denial of benefits is affirmed.[1]

## Background

In November 2022, plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of September 20, 2022. [10-1] 289. The claim was denied initially, on reconsideration, and by an administrative law judge (ALJ) after a hearing. [*Id.*] 289-304. The Appeals Council denied review in September 2025 [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court, and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. [10-1] 291. At step two, the ALJ determined that plaintiff had three severe impairments: depression, anxiety, and post-traumatic stress disorder (PTSD). [*Id.*] 291-93. At step three, the ALJ concluded that plaintiff's impairments did not meet or

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [10], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [7].

equal the severity of a listed impairment. [*Id.*] 293-95. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity to work at all exertional levels, except that plaintiff (1) was limited to working in non-hazardous environments and should avoid concentrated exposure to unguarded hazardous machinery; (2) can understand, remember, and carry out simple instructions and make simple work-related decisions; (3) can tolerate occasional interactions with supervisors and coworkers but cannot tolerate any interactions with the general public; (4) can tolerate occasional changes in a routine work setting; and (5) cannot perform work requiring a specific production rate. [*Id.*] 295. At step four, the ALJ held that plaintiff could not perform his past relevant work as a maintenance mechanic. [*Id.*] 302. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: industrial cleaner (28,600 jobs), lab equipment cleaner (25,000 jobs), and laundry worker (13,000 jobs). Accordingly, the ALJ determined that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted)

## Discussion

### A. Listing 12.05

Plaintiff first argues that substantial evidence does not support the ALJ's determination that his impairments did not meet or equal Listing 12.15, which applies to trauma- and stressor-related disorders. [13] 6-9. Plaintiff contends that, in making his step three ruling, the ALJ relied on isolated and irrelevant observations while "failing to grapple with substantial contrary psychiatric evidence from [his] treating providers." [*Id.*] 7. Plaintiff also maintains that the ALJ did not build a logical bridge from the evidence that he experienced panic attacks, nightmares and difficulties sleeping, and memory problems to his conclusion that plaintiff did not meet or equal Listing 12.15. [*Id.*] 7-8. Finally, plaintiff insists that the ALJ did not meaningfully consider observations from his treating psychiatrist that he was unable to work and should apply for disability. [*Id.*] 8.

At step three, the ALJ determines whether a claimant's impairments are "presumptively disabling," meaning they are "so severe that they prevent a person from doing any gainful activity and make further inquiry into whether the person can work unnecessary." *Williams v. O'Malley*, No. 20-CV-50490, 2024 WL 4063913, at *2 (N.D. Ill. Sept. 5, 2024) (internal quotation marks omitted). "An impairment is presumptively disabling if it is listed in 20 C.F.R. § 404, Subpart P, Appendix 1 or if it is medically equivalent to a listing in that appendix." *Id.* (citing 20 C.F.R. § 404.1525(a)). To meet Listing 12.15, plaintiff had to satisfy the paragraph A criteria of that Listing and either the criteria of paragraph B or paragraph C. *See Whittaker v. O'Malley*, No. 1:23-CV-250-CCB, 2024 WL 1956392, at *4 (N.D. Ind. May 2, 2024); 20 C.F.R. § 404, Subpart P, App. 1, § 12.00.

In this case, the ALJ did not discuss whether plaintiff met the paragraph A criteria, and plaintiff's briefs do not address those criteria, either. *See* [10-1] 293-95; *see also* [13] 6-9; [17] 1-6.[3] The ALJ found that plaintiff did not satisfy either the paragraph B or paragraph C criteria, and plaintiff challenges only the ALJ's paragraph B findings. Plaintiff could have satisfied the paragraph B criteria if the ALJ had found that he was extremely limited in one, or markedly limited in two, of the four areas of mental functioning, but the ALJ found that plaintiff was no more than moderately limited in his mental functioning. [10-1] 293-94. Contrary to the Commissioner's apparent argument, *see* [16] 3-4, 5, the Court disagrees that plaintiff has forfeited or waived his claim by failing to address the paragraph A criteria. Because "the ALJ did not get into a discussion of the Paragraph A criteria, the Commissioner cannot now raise that issue in his brief." *Whittaker*, 2024 WL 1956392, at *5. The Court therefore assumes, *arguendo*, that plaintiff satisfied the paragraph A criteria and turns to plaintiff's challenge to the paragraph B criteria. *See Jody L.K. v. Comm'r of Soc. Sec.*, Case No. 4:20-cv-4119-SLD-JEH, 2021 WL 8267447, at *8 (C.D. Ill. Nov. 11, 2021) (holding that, in case where ALJ did not address paragraph A criteria of Listing 12.15 and plaintiff challenged only paragraph B findings, it was "unnecessary to consider the 'paragraph A' criteria").

First, the ALJ decision refutes plaintiff's claim that the ALJ "fail[ed] to grapple with" and did not "meaningful[ly] consider" the evidence that he experienced severe recurring symptoms such as high anxiety, poor sleep, impaired attention and concentration, and panic. [13] 7, 8. On the contrary, the ALJ discussed nearly all this evidence at two separate points in his decision. At step three, the ALJ went through the evidence reflecting that plaintiff (1) had "problems with short-term memory" that "made it 'mentally impossible' to work [10-1] 293; (2) entered a partial hospitalization program in September 2022 [*id.*]; (3) was apprehensive about being around other

---

[3] The criteria in paragraph A require medical documentation of all the following: exposure to actual or threatened death, serious injury or violence; subsequent involuntary re-experiencing of the traumatic event; avoidance of external reminder of the event; disturbance in mood and behavior; and increases in arousal and reactivity. *See Whittaker*, 2024 WL 1956392, at *4 n.1.

people [*id.*]; (4) presented as "highly anxious" at a January 2023 psychiatric appointment [*id.*]; (5) had difficulty completing what he started [*id.*] 294; (6) experienced panic attacks, at least one of which led him to seek emergency-room treatment in the mistaken belief that he was having a heart attack [*id.*]; (7) went into a "frenzy" after receiving a letter asking him to amend a tax return [*id.*]; and (8) presented at another psychiatric appointment with racing thoughts and rapid, disorganized speech [*id.*]. And when the ALJ determined plaintiff's RFC, he more fully discussed additional evidence reflecting that (9) plaintiff had problems sleeping [*id.*] 296; (10) he complained of significant memory problems occurring over a lengthy period [*id.*]; and (11) his response to stress was "the biggest trigger for increased anxiety" [*id.*] 298. Reading the ALJ's decision as a whole demonstrates that the ALJ grappled with the evidence that supported plaintiff's claim to be disabled.

Second, the ALJ met "the most minimal of articulation requirements," *Warnell*, 97 F.4th at 1053, to which he was subject when finding that plaintiff's impairments caused no more than moderate mental limitations.

To begin, both state agency reviewing psychologists found that plaintiff had no more than moderate limitations in the areas of understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. [10-1] 342-44, 352-54. Notably, the ALJ rejected the initial reviewer's opinion that plaintiff had only mild limitations in two areas of mental functioning and found both opinions persuasive to the extent they reflected that plaintiff "experiences no more than moderate mental health-related limitations." [*Id.*] 300-01. Furthermore, the ALJ recognized that plaintiff's psychiatrist, Dr. Steven Resis, opined that plaintiff had marked limitations in the areas of social interactions, adapting and managing oneself, and concentrating, persisting, or maintaining pace. [*Id.*] 300; *see also* [*id.*] 771-73. But the ALJ found that those conclusions lacked support in, and were not clearly explained by, Dr. Resis's treatment notes. *See* [*id.*] 300 ("Considered longitudinally, it is not clear from these notes how the psychiatrist was able to extrapolate the claimant had marked limitation[s]" in three areas of mental functioning). Finally, the ALJ gave multiple reasons for discrediting plaintiff's statements about the severity and limiting effects of his symptoms:

- Regarding plaintiff's panic attacks, the ALJ highlighted the absence of "objective evidence presenting documented observation of the claimant's presentation during a panic attack." [10-1] 297. The ALJ also recognized plaintiff's report to Dr. Resis that his panic attacks and stress had diminished by 80% after he quit working. And while the ALJ considered that this report suggested that work-related stress exacerbated his mental-health symptoms, the ALJ credited plaintiff's statement in a July 2023 functional report that "he learns to cope with stress" and "medication helps." [*Id.*] 300.

- Regarding plaintiff's ability to manage stress, the ALJ found that plaintiff had learned coping skills during his partial hospitalization and intensive outpatient program and used those skills "to develop increased stress tolerance resulting in decreased physical symptoms of anxiety/depression." [10-1] 298. The ALJ also observed that treatment notes did not reflect that plaintiff was using those skills after his discharge. [*Id.*].

- Regarding plaintiff's memory complaints, the ALJ noted the absence of any evidence in Dr. Resis's treatment notes to corroborate the claim that plaintiff experienced "significant memory and word-finding difficulties" that plaintiff allegedly experienced over "a long-term basis." [10-1] 299; *see also* [*id.*] 751. The ALJ pointed out that the notes instead reflected that plaintiff's memory was usually intact and exhibited only minor deficits. [*Id.*] 297, 299

- Regarding plaintiff's difficulties being around other people, the ALJ noted that plaintiff's treaters had not regularly documented him being anxious around others when coming to the office for appointments. [*Id.*] 300.

Taken together, this evidence–as well as that cited in the ALJ's ruling at step three–provided a substantial evidentiary basis for the ALJ's ruling that plaintiff's impairments caused no more than moderate limitations in his mental functioning. The Court considers all this together because "when an ALJ explains how the evidence reveals a claimant's functional capacity"–as he did here–"that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing." *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020).

Third, plaintiff's contention that the ALJ did not meaningfully consider Dr. Resis's observations ignores that the ALJ expressly weighed Resis's opinion statement and–in a portion of the ruling that plaintiff does not mention, let alone challenge–found it unpersuasive. *See* [10-1] 301. The ALJ gave three examples of statements in Dr. Resis's opinion or his treatment notes that were unsupported. *See* [*id.*] 299 (observation that plaintiff had long-term memory issues contradicted by multiple treatment reports finding only "minor deficits" in memory and concentration); [*id.*] 300 (no support in treatment note for Resis's opinion that plaintiff had marked mental limitations); [*id.*] (no objective observations supporting Resis's opinion that plaintiff "is clearly disabled and likely will have disability for life"). This was a substantial ground for rejecting Dr. Resis's opinion. *See Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023) ("[s]upportability and consistency are the two most important factors" in weighing opinion evidence).

For these reasons, the Court rejects plaintiff's argument that substantial evidence does not support the ALJ's ruling that his impairments did not meet Listing 12.15.

**B. Mental RFC Determination**

Plaintiff next argues that the ALJ's determination of his mental RFC does not adequately account for "the actual degree of limitation reflected in the longitudinal record." [13] 9. In support, plaintiff contends that the record "documented not merely some anxiety, but serious and ongoing PTSD-related symptoms." [*Id.*] 10. Plaintiff maintains that the findings reflected in Dr. Resis's treatment notes cannot be accounted for "merely by restricting Plaintiff to simple instructions, simple decisions, occasional coworker/supervisor interaction, no public contact, and no assembly-line pace." [*Id.*]. Finally, plaintiff highlights Seventh Circuit precedent that establishes that "generic simplification" does not "automatically capture[ ] limitations in concentration, persistence, pace, or adaption." [*Id.*]. The Court rejects these arguments for three reasons.

First–and most importantly–plaintiff's argument invites the Court to reweigh the evidence supporting his disability claim and find that it is more credible than the ALJ found it to be and warrants more and/or more severe work-related restrictions than the ALJ imposed.

As discussed in Section A, *supra*, the ALJ considered the evidence suggesting that plaintiff suffered severe and recurring symptoms of PTSD, depression, and anxiety disorder. But the ALJ relied on substantial evidence to find that plaintiff's statements about the severity and limiting effects of his symptoms were not fully credible, Dr. Resis's opinions were not well-supported, and Resis's treatment notes did not contain objective findings that supported plaintiff's disability claim. The question for this Court, then, is whether the mental RFC determination adequately accounted for the limitations that the ALJ found were caused by plaintiff's mental impairment. But plaintiff asks the Court to review Resis's treatment notes, *see* [13] 10 (citing [10-1] 739-70 (Resis's treatment notes) and 606-07 (brief at administrative level summarizing Resis's treatment notes), and rule that those "findings directly impact" plaintiff's mental functioning and reflect "limitations" that "are not fully captured" by the mental RFC determination. [*Id.*]. The Court rejects this argument because the Court cannot "reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023); *accord Schaekel v. Bisignano*, Case No. 25-CV-506, 2026 WL 2410164, at *5 (E.D. Wis. Aug. 18, 2026) (rejecting argument that ALJ did not adequately explain why he did not credit claimant's evidence of impaired mental functioning and holding that "[t]o require an ALJ to arrive at a different RFC determination under these circumstances would be to substitute this court's

judgment for that of the ALJ, an action that falls outside of this court's purview"); *Staci D.T. v. Bisignano*, No. 4:24-cv-180-KMB-TWP, 2026 WL 796721, at *6 (S.D. Ind. Mar. 23, 2026) (rejecting argument that ALJ should have crafted more restrictive mental RFC determination and ruling that, "[t]o the extent Staci point to evidence that could support greater limitations, the Court may not reweigh that evidence or substitute its judgment for that of the ALJ").

Second, and setting aside the dispositive flaw in plaintiff's argument, the ALJ permissibly based the mental RFC determination on the opinions of the state agency reviewing psychologists. *See Burmester v. Berryhill*, 920 F.3d 507, 511-12 (7th Cir. 2019) (ALJ can base mental RFC determination on "opinion of a medical expert who translates these findings [*i.e.*, findings of impaired mental ability] into an RFC determination").

The ALJ's RFC assessment "must incorporate all of the claimant's limitations supported by the medical record." *Burmester*, 920 F.3d at 511. As part of this assessment, "ALJs must consider–but are not required to adopt–the findings of state-agency psychologists." *Monday v. Comm'r of Soc. Sec.*, Case No. 4:23-CV-96-JD, 2025 WL 865146, at *4 (N.D. Ind. Mar. 20, 2025) (internal quotation marks omitted). The state agency psychologists consider how a claimant's mental impairments affect "the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." *Id.*

Here, the state agency reviewers agreed that plaintiff was moderately limited in his ability to understand, remember, and apply information and concentrate, persist, or maintain pace. *See* [10-1] 342-44, 352-54. The reviewer at the reconsideration level found that plaintiff was also moderately limited in interacting with others and adapting or managing oneself. [*Id.*] 352-54. Both reviewers provided narrative translations of their paragraph B findings, and these translations map directly onto the ALJ's mental RFC determination. The initial reviewer, Dr. Melanie Nichols, concluded that, notwithstanding his moderate limitations in mental functioning, plaintiff should be able to "meet the basic mental demands of . . . simple tasks on a sustained basis," respond "appropriately to supervision, coworkers and work situations," and "deal with changes in a routine work setting." [*Id.*] 344. The reconsideration reviewer, Dr. Michael Schneider, opined that plaintiff could perform "simple, routine or repetitive tasks in a low pressure/low stress work environment that has minimal demands for interactions with others." [*Id.*] 355. The ALJ's mental RFC determination corresponds to these opinions because he limited plaintiff to work that entailed (1) simple instructions and simple work-related decisions; (2) no interactions with the public; (3) occasional interactions with coworkers and supervisors[4]; and (4) occasional changes in a routine work setting. What's more, the

[4] Although not argued by plaintiff, the Court notes that, "in the context of interpersonal encounters, 'occasional' has repeatedly been found to signify minimal interaction with

ALJ went beyond the restrictions identified by the state agency reviewers by limiting plaintiff to working in "non-hazardous environments" to account for his inattentiveness (which the ALJ accepted could be a product of his problems sleeping and anxiety) and by limiting him to work that did not require a specific rate of production. [*Id.*].

Third, this was not–as plaintiff incorrectly asserts–a case where the ALJ impermissibly tried to account for plaintiff's mental limitations by restricting him to simple work. As just discussed, the ALJ's mental RFC determination was supported by the narrative translations in the state agency reviewers' opinions, which reflected that plaintiff could perform a range of simple work notwithstanding his moderate mental limitations, including his moderately limited ability to concentrate, persist, or maintain pace. *See Burmester*, 920 F.3d at 511-12.

For these reasons, the Court rejects plaintiff's second argument for remand.

**Conclusion**

Plaintiff's motion for summary judgment [13] is denied, defendant's motion for summary judgment [16] is granted, and the denial of benefits is affirmed.

Heather K. McShain

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 27, 2026**

others." *Pattee v. Kijakazi*, Cause No. 1:21CV179-PPS/SLC, 2022 WL 3974446, at *9 (N.D. Ind. Sept. 1, 2022).